1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12

EDWARD ALLYN HUDACKO,

                    Plaintiff,

        v.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, et al.,

                    Defendants.

Case No.  3:23-cv-05316-SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS**

Re: Dkt. Nos. 30, 32, 36, 37

13
14

        Before this Court are four motions to dismiss filed by defendants.  Dkt. Nos. 30, 32, 36, 37.[1]

15

Plaintiff opposes each motion.  For the reasons set forth below, the Court GRANTS in part and

16

DENIES in part the motions to dismiss.

17
18

**BACKGROUND[2]**

19

        Plaintiff filed his complaint *pro se* and the complaint is 109 pages long, consisting of 26

20

pages of pleadings and 83 pages of attachments.  Dkt. No. 19 ("Compl.").  Attachments include

21

medical records and correspondence between the parties.  Plaintiff seeks to "vindicate . . . his right

22

to prohibit gender identity related surgery upon his minor child."  *Id.* ¶ 1.

23

        Plaintiff and his ex-wife Christine Underhill, f/k/a/ Christine Hudacko, "were embroiled in

24
25
26

        [1] Defendants Regents of the University of California, Janet Yi Man Lee, Diane Ehrensaft,
and Stephen Rosenthal filed two identical motions to dismiss.  Dkt. Nos. 35, 36.  The Court refers
to the later filed motion, Dkt. No. 36, throughout.

27
28

        [2] For purposes of this motion to dismiss, the Court treats as true the factual allegations as
stated in plaintiff's complaint and draws all reasonable inferences in plaintiff's favor.  *See Usher v.
City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

United States District Court
Northern District of California

a high-conflict family law case." *Id.* ¶ 31.[3]  "The point of contention was that Christine wanted to attempt to medically 'transition' their son . . . from boy to girl," which plaintiff opposed "based on his belief that the treatments for 'gender dysphoria' remain largely experimental." *Id.* ¶¶ 31-32.  On August 26, 2020, the Contra Costa County Superior Court granted Underhill sole temporary legal custody over their (then) minor child ("Minor") and authorized Underhill to "make decisions on her own for [Minor's] health, education and welfare without Father's consent."  Compl., Ex. A at ECF 6.[4]  The court ordered that plaintiff "not have visitation with [Minor] unless it is in a therapeutic setting with [Minor's] consent."  *Id.*  Plaintiff was granted "the right to obtain all otherwise confidential information regarding [Minor's] health, education, and welfare" but "does not have a 'right' to attend medical appointments for [Minor]."  *Id.*  Underhill was "not ordered specifically to provide Father with 'updates' on a monthly or weekly basis.  Mother may provide such information to Father at her discretion."  *Id.*  The order further provides that plaintiff "may contact [Minor's] doctors, teachers, etc. for information about [Minor]."  *Id.*

The custody order also details services Minor could receive.  *Id.* at ECF 7-8.  At issue here is the provision that "[Minor] will not be permitted to undergo any gender identity related surgery until they are 18 years of age, absent a written agreement by both parties, Christine Hudacko and Edward Hudacko, or an order of the court."  *Id.* at ECF 7.  The order also contains a provision stating: "[Minor] shall be permitted to pursue the services provided by UCSF as to [Minor's] gender identity, and shall be permitted to commence hormone therapy, if recommended by UCSF."  *Id.*  On September 29, 2020 Underhill informed plaintiff via email that UCSF had been provided with the custody order per their request.  Compl. ¶ 36.

---

[3] Underhill's name was restored to Christina Marie Underhill during the marriage dissolution proceedings between her and plaintiff.  Dkt. No. 33-1, Ex. A at ECF 4.  The Court thus refers to plaintiff's ex-wife as defendant Underhill throughout.

[4] Minor was born in 2004 and was a minor at the time of the alleged facts.  Compl., Ex. A at ECF 4.  The Court refers to Minor as Minor throughout to preserve their anonymity.

Plaintiff and Underhill had two children together.  They were granted joint legal and physical custody over their younger child.  Compl., Ex. A at ECF 4.  The custody order pertaining to the younger child is not at issue in this case.

United States District Court
Northern District of California

On February 17, 2021, without plaintiff's knowledge, Underhill took Minor for a patient visit at the University of San Francisco ("UCSF") Child and Adolescent Gender Center ("the UCSF Center). *Id.* ¶ 38, Ex. E.  At that visit, "UCSF doctors discussed with [Minor] a category of experimental drugs called 'Puberty Blockers' that 'help temporarily suspend or block the physical changes of puberty.'"  *Id.* ¶ 38 (quoting Ex. E).  Four different types of puberty blockers were discussed at that visit.  *Id.* ¶ 39.  According to plaintiff, the first three options were nonsurgical (injections or an oral tablet), however the fourth option – a "subcutaneous histrelin implant" – required surgery.  *Id.*  On that same date, UCSF sent an appointment follow-up letter that listed the risks of puberty blockers, including that "the side effects and safety of puberty blockers are not completely understood," "[t]here may be long-term risks that are not yet known," and the blockers are "not approved by the Food and Drug Administration for this specific use."  *Id.*, Ex. E at ECF 2-21.  On August 4, 2021, a "histrelin subcutaneous implant was inserted" into Minor's arm ("the implant procedure").  *Id.*, Ex. I.  Plaintiff alleges that this procedure was categorized as surgery.  *Id.* ¶ 45.  UCSF billed $209,820.34 for the procedure.  *Id.* ¶ 46, Ex. L.  Plaintiff points to a claim detail from UnitedHealthcare that lists a "surgery" on August 4, 2021, amount billed $745.  *Id.*, Ex. D.  UCSF medical records indicate that the "histrelin subcutaneous implant was inserted" and refer to the insertion as a "procedure."  *Id.*, Ex. I.  The implant was 3.5 cm long and 3 mm wide.  *Id.*

On October 18, 2021 Underhill emailed plaintiff: "[Minor] has begun hormone therapy – testosterone blocker (Supprelin) via an implant and estrogen via pills (Estradiol).  [Minor] is doing well and happy to finally begin the process . . . Insurance has paid for the vast majority of the implant procedure and I sent UCSF a check for the balance ($2035.64).  I don't expect that you will pay for half given your disapproval of transitioning."  Compl., Ex. C.  Plaintiff "did not know that Defendants were planning to perform gender related surgery" until this date, "months after surgery was actually performed."  *Id.* ¶ 91.  Had the "scheme" been disclosed to plaintiff prior to the "surgery," plaintiff "could and would have brought the scheme to the attention of the Family Court, seeking an emergency protective order placing all Defendants on notice that severe consequences – sufficient to stop the scheme – would result from any violation of the no surgery injunction."  *Id.* ¶ 93.

Plaintiff has sued seven defendants including Underhill, her counsel, Minor's court-appointed counsel, UCSF, UCSF physicians, and a volunteer attorney with the UCSF Center.[5]  He alleges that The Regents of the University of California ("Regents") "implemented a policy under which it may accept money in exchange for performing gender identity related surgery on a minor child without obtaining the necessary consent, while concealing any such activity from any disapproving interested person."  *Id.* ¶ 15.  He alleges that the individual defendants, acting as employees of the Regents or *de facto* state actors, are participants in and aided this "scheme" and that all defendants concealed the alleged scheme.  *See id.* ¶¶ 15-29.  He alleges seven causes of action: (1) 42 U.S.C. § 1983 - damages, deprivation of fundamental right to direct a minor child's medical care without due process and conspiracy to same; (2) 14th Amendment procedural due process violation; (3) fraud by concealment; (4) medical battery and civil conspiracy to same; (5) intentional infliction of emotional distress and civil conspiracy to same; and (6) negligent infliction of emotional distress.  Plaintiff also seeks a declaratory judgment under 28 U.S.C. § 2201 that "a valid Court Order enjoining gender identity related surgery for a minor child without the parent's consent shall hereafter be considered a fundamental constitutional right, because it derives from the fundamental right to family unity found in the liberty clause of the 14th Amendment."  *Id.* at 13-23.

Plaintiff "suffered constitutional, emotional, and financial damages as a result of Defendants' scheme to perform gender identity related surgery on a minor child without obtaining the necessary consent."  *Id.* ¶ 14.  Plaintiff "was harmed emotionally" and "suffers severe anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame."  *Id.* ¶ 95.  He was

---

[5] Defendant Underhill, sued in her individual capacity and as a *de facto* state actor, is plaintiff's ex-wife and the mother of Minor.  *Id.* ¶¶ 28-29.  Defendant Bigger, sued in his individual capacity and as a *de facto* state actor, is an attorney who represented Underhill in the family law case.  *Id.* ¶¶ 24-25.  Defendant Harkins, sued in his individual capacity and as a *de facto* state actor, was the court-appointed attorney for Minor during the family court proceedings.  *Id.* ¶¶ 26-27; Dkt. No. 30 at 4.  Defendant Lee, sued in her individual capacity, is a pediatric endocrinologist at UCSF.  *Id.* ¶ 17.  Defendant Ehrensaft, sued in her individual and official capacities, is co-director of the Center and is a developmental and clinical psychologist.  *Id.* ¶¶ 18-19.  Defendant Rosenthal, sued in his individual and official capacities, is also co-director of the UCSF Center and a Professor of Pediatrics at the UCSF School of Medicine.  *Id.* ¶¶ 20-21.  Defendant Orr, sued in his individual and official capacities, "is a California attorney, transgender activist, and was legal director" of the UCSF Center.  *Id.* ¶¶ 22-23.  According to Orr, he was an unpaid volunteer attorney and gave "his legal opinion to UCSF that the hormone suppressor treatment did not constitute a violation of the custody order."  Dkt. No. 32-1 at 2, 4.

also harmed financially as he "expended, and will continue to expend money for treatment for emotional distress." *Id.* ¶ 97.

\* \* \*

On September 29, 2023, plaintiff filed an order to show cause in Contra Costa County Superior Court, the same court that issued the August 26, 2020 custody order. Dkt. No. 32-3, Ex. 1. Plaintiff requested an order to show cause why citees Christine Hudacko, her attorney Nathaniel Bigger, Minor's counsel Daniel Harkins, and UCSF should not be held in contempt for "willfully violating an order prohibiting gender identity related surgery." *Id.* The state court indicated that it did not have jurisdiction over the UCSF defendants or Orr. *See* Dkt. 50-2. The hearing on the order to show cause for contempt was continued in state court several times. On May 17, 2024, this Court held a hearing on defendants' motions to dismiss. That same day, plaintiff's counsel filed a status update indicating that plaintiff filed a notice of withdrawal of the contempt actions in state court. *See* Dkt. No. 77. Because there are no longer pending state court proceedings involving the custody order, the Court does not address the argument raised by several of the defendants that this Court should abstain.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher*, 828 F.2d at 561. However, the court is not required to accept as true

United States District Court
Northern District of California

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 556).  Dismissal under Rule 12(b)(6) is also proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Exhibits attached to the complaint, documents incorporated by reference, and matters properly subject to judicial notice are considered when reviewing the sufficiency of a complaint. *In re NVIDIA Corp. Security Litigation*, 768 F.3d 1046, 1051 (9th Cir. 2014).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Furthermore, "[d]ismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted).

# DISCUSSION

## I.    Requests for Judicial Notice

Defendant Orr requests judicial notice of the fact that a hearing on an order to show cause for contempt was set for February 2, 2024 in Contra Costa County Superior Court Case No. MSD19-05641, *Christine Marie Hudacko, Petitioner v. Edward Allyn Hudacko, Respondent*, at the request of plaintiff arising out of the alleged violation of that court's August 26, 2020 custody order related to its prohibition of gender identity related surgery.  Dkt. No. 32-2.  The Court DENIES this request for judicial notice because plaintiff has since withdrawn the state court contempt actions and the

6

1   Court thus does not rely on these documents in its Order.  Plaintiff also requests judicial notice of

2   the Order to Show Cause for Contempt filed on September 29, 2023.  Dkt. No. 49-1, Ex. A; Dkt.

3   No. 50-2, Ex. A.  The Court likewise DENIES this request.

4          Defendants Lee, Ehrensaft, and Rosenthal request judicial notice that Minor is no longer a

5   minor and is presently over the age of 18 based on exhibits attached to the complaint; the August

6   26, 2020 custody order attached to the complaint; and the fact that the Regents of the University of

7   California is a public entity.  Dkt. No. 36-1.  The Court GRANTS these requests for judicial notice

8   pursuant to Rule § 201.

9          Defendants Bigger and Underhill request judicial notice of a March 29, 2023 judgment in

10  the marriage dissolution proceedings between plaintiff and Underhill filed in Contra Costa Superior

11  Court, Case No. D19-05641, including its attachments.  Dkt. No. 37-1.  Bigger and Underhill also

12  request judicial notice of a February 25, 2022 order in the marriage dissolution proceedings, Case

13  No. MSD 19-05641.  *Id.*  The Court GRANTS these requests for judicial notice pursuant to Rule §

14  201.

15         Plaintiff requests judicial notice of numerous other documents.  Dkt. No. 49-2; Dkt. No. 50-

16  1; Dkt. No. 40-1.[6]  Some of these documents were attached to complaint and are thus already under

17  consideration by the Court.  The Court DENIES the requests to take judicial notice of the documents

18  that were not attached to the complaint based on relevancy and because some are sources whose

19  accuracy reasonably can be questioned.

20         In his opposition to several of the motions to dismiss, plaintiff contends that the supprelin

21  implant Minor received was a surgery as a matter of law and as a judicially noticeable fact.  Dkt.

22  No. 49 at 8; Dkt. No. 50 at 14-15; Dkt. No. 40 at 17-18.  The Court disagrees.  This case will turn

23  on whether the implant was "gender identity related surgery" under the custody order that required

24  "a written agreement by both parties", or "services provided by UCSF as to [Minor's] gender

25  identity," including "hormone therapy," that the custody order specifies Minor "shall be permitted

26  to pursue . . . if recommended by UCSF."  Compl., Ex. A at ECF 7.  This determination will be

27  _____

28         [6] These requests are identical.

7

1    made on the merits, not at the pleadings stage.

2          In defendants' March 28, 2024 status report regarding the then pending state court

3    proceedings, defendants "advised" the Court that Minor filed a petition for recognition of change of

4    gender and sex identifier in Contra Costa County Superior Court, and that an order was issued on

5    June 12, 2023 recognizing change of gender and sex identifier and for name change and issuance of

6    new certificates.  Dkt. No. 72.  Defendants attached redacted copies of the petition and order.

7    Plaintiff objected to the filing of the June 12, 2023 order on the grounds that it is non-responsive,

8    irrelevant, and inflammatory.  Dkt. No. 75.  The Court does not consider this material because it is

9    outside the scope of the Court's orders requesting status updates about the then pending state court

10   contempt proceedings.  *See* Dkt. Nos. 60, 64, 69.

11

12   **II.     Federal Claims**

13          **A.     Whether Harkins, Bigger, and Underhill Are *De Facto* State Actors**

14          "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

15   Constitution and laws of the United States, and must show that the alleged deprivation was

16   committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

17   "Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in

18   the United States Constitution and defined by federal law."  *Vinson v. Thomas*, 288 F.3d 1145, 1155

19   (9th Cir. 2002).  Only a state actor can be liable under 42 U.S.C. 1983.  *See American Mfrs. Mut.*

20   *Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth

21   Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private

22   conduct, no matter how discriminatory or wrongful") (internal quotation marks and citations

23   omitted).  Dismissal of a § 1983 claim on a Rule 12(b)(6) motion "is proper if the complaint is

24   devoid of factual allegations that give rise to a plausible inference of either element."  *Naffe v. Frey*,

25   789 F.3d 1030, 1036 (9th Cir. 2015).

26          The Court addresses the second element, "under color of state law," first.  The parties agree

27   that Harkins, Bigger, and Underhill are a private actors; their dispute centers on whether these

28   defendants are *de facto* state actors such that a § 1983 claim can be brought against them.  The

United States District Court
Northern District of California

Supreme Court "has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). Plaintiff alleges that Harkins, Bigger, and Underhill are *de facto* state actors under the joint action test. *See* Compl. ¶¶ 49-58.

"Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, 312 F.3d at 445 (internal quotation marks and citations omitted). "The test focuses on whether the state has so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." *Id.* "Joint action therefore requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). A plaintiff may demonstrate joint action by showing the existence of a conspiracy or that the "private party is a willful participant in joint action with the State or its agents." *Id.* (internal quotations marks and citations omitted). "To prove a conspiracy between the state and private parties under section 1983, [plaintiffs] must show an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-51 (9th Cir. 1989); *see also Franklin*, 312 F.3d at 445 ("To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights").

Plaintiff alleges that the Regents, whom the parties agree is a state actor, and the "nominally private actors"—Harkins, Bigger, and Underhill—were "intertwined in a symbiotic relationship" involving a "scheme" to perform "gender identity related surgery" without plaintiff's consent. Compl. ¶¶ 12, 52, 54. Plaintiff further alleges that this plan "included an agreement to conceal the plan" from plaintiff. *Id.* ¶¶ 12, 54. Plaintiff also alleges that the "Regents insinuated itself into a position of interdependence with the nominally private actors, as Defendants each got what they wanted by formulating, concealing and executing the scheme." *Id.* ¶ 57. These are conclusory allegations devoid of specific facts this Court need not accept as true. *See In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1055.

9

United States District Court
Northern District of California

1    Plaintiff alleges the following facts with respect to defendant Harkins, the Minor's court-

2    appointed attorney: Harkins was aware of the provision in the custody order about no surgery

3    without plaintiff's consent; Harkins accepted "money in exchange for concealing the scheme" from

4    plaintiff; and "the professionals," which the Court construes to include Harkins, secured "financial

5    goals, i.e. getting a nice paycheck, [that] could not have been realized without the scheme." Compl.

6    ¶¶ 26-27, 57, 72, 79. Drawing all inferences in plaintiff's favor, the Court cannot reasonably infer

7    that the Regents and Harkins acted in concert or jointly participated in a scheme or agreement to

8    deprive plaintiff of his constitutional rights. Plaintiff does not allege that Harkins received any

9    money from or paid any money to the Regents or their agents.[7] Nor does plaintiff allege that Harkins

10    communicated with the Regents or UCSF personnel about the procedure prior to its occurrence, that

11    Harkins had any involvement with the Regents, or that the Regents controlled in any way Harkins's

12    court-appointed representation of Minor.[8] Plaintiff also alleges no facts suggesting that Harkins and

13    the Regents had a "meeting of the minds" to violate plaintiff's constitutional rights to support his

14    conclusory allegations of a conspiracy. *See Phelps Dodge Corp.*, 865 F.2d at 1540-51.

15    Plaintiff's primary argument in opposition is that it is plausible that Harkins "participated

16    and was paid for having conversations regarding the planning, execution and concealment of the

17    Supprelin Implant" because Harkins's billing records indicate he had conversations with various

18    Defendants during the time when the surgery was being planned. Dkt. No. 40 at 7. Plaintiff points

19    to a billing invoice from Harkins's law office, about which plaintiff presents numerous speculative

20    inferences drawn from one line billing entries. *See* Compl., Ex. F; Dkt. No. 40 at 9-10. The invoice

21    details professional services from June 29, 2020 through March 30, 2022. While the names of some

22    other named defendants appear, the Court cannot reasonably infer from this invoice that Harkins

---

[7] The custody order specifies that Harkins is to be paid jointly by plaintiff and Underhill. Compl., Ex. A at ECF 7 ("The parties agree and the court orders that Mr. Harkins shall continue to serve as minor's counsel . . . Costs of minor's counsel shall be paid for by Father 70% and by Mother 30%).

[8] The Court further notes that to the extent plaintiff seeks to use Harkins's status as Minor's court-appointed attorney to support joint action, an argument plaintiff does not raise, the Ninth Circuit has held that a child's state-appointed guardian is not a state actor under the joint action test. *Kirtley v. Rainey*, 326 F.3d 1088, 1093-94 (9th Cir. 2003).

acted in concert with the Regents to deprive plaintiff of his constitutional rights. The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" such as the assertions raised in plaintiff's opposition that "Harkins receiving payment is contingent on his participation in the scheme" or that "Harkins was busy scheming with the other Defendants during February – June 2021 to plan, execute and conceal the Supprelin Implant surgery." *See Usher*, 828 F.2d at 561; *In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1055.

Plaintiff alleges the following facts with respect to Bigger, attorney for Underhill: Bigger "knew about the no surgery injunction" and accepted money "in exchange for advising [Underhill] that unconsented gender identity related surgery on a minor was legal." Compl. ¶¶ 3, 24. Plaintiff alleges the following facts with respect to Underhill: Underhill "knew about the no surgery injunction" and employed the other defendants "to achieve her goal of obtaining gender identity related surgery on the minor child" without plaintiff's consent. Compl. ¶¶ 3, 28.

Drawing all inferences in plaintiff's favor, the Court likewise cannot reasonably infer that the Regents and Bigger or Underhill acted in concert or jointly participated in a scheme or agreement to deprive plaintiff of his constitutional rights. With respect to Bigger, plaintiff does not allege that Bigger received any money from or paid any money to the Regents or their agents. Nor does plaintiff allege that Bigger communicated with the Regents or UCSF personnel about the procedure prior to its occurrence, that he had any involvement with the Regents, or that the Regents controlled in any way Bigger's representation of Underhill. Plaintiff also alleges no facts suggesting that Bigger and the Regents had a "meeting of the minds" to violate plaintiff's constitutional rights to support his conclusory allegations of a conspiracy. *See Phelps Dodge Corp.*, 865 F.2d at 1540-51. With respect to Underhill, the Court cannot reasonably infer from the extensive exhibits attached to the complaint that Underhill intended to violate the custody order or worked in concert with the UCSF defendants to violate it.

In his opposition, plaintiff points to Exhibit G to his complaint, which consists of June 8, 2021 progress notes from defendant Rosenthal, professor of pediatrics at USCF medical school. *See* Compl., Ex. G at ECF 28. The progress notes state: "Pt's mother in contact with Asaf Orr. Mother

and pt have separate attorneys who are navigating complex family situation; in particular insurance issues, as pt is currently using father's insurance and father is not supportive of pt's gender care." *Id.* The notes further state: "Mother is working with her attorney, Minor's attorney and Asaf Orr, JD—everyone is working together to achieve resolution in near future." *Id.* at ECF 29. The Court cannot reasonably construe this to be "evidence" of a conspiracy; it reflects that existence of a family law dispute and does not plausibly allege that the parties shared with the Regents a "goal" of violating plaintiff's constitutional rights. *See Franklin*, 312 F.3d at 445. These progress notes further reinforce plaintiff's allegation that he and Underhill were "embroiled in a high-conflict Family Law case." Compl. ¶ 31. With respect to Bigger, the notes do not represent that he was at this office visit. Plaintiff also points to the October 18, 2021 email from Underhill to plaintiff. *See* Compl, Ex. C at ECF 14. The Court cannot reasonably infer from this email that Underhill intended to violate the custody order and plaintiff's constitutional rights.

Because Harkins, Bigger, and Underhill are not *de facto* state actors, the Court dismisses the federal claims against these three defendants. However, because plaintiff filed his complaint *pro se*, the Court will grant him leave to amend to allege additional facts.

### B.     Whether Defendant Orr and the UCSF Defendants Are Immune Under the Eleventh Amendment

#### 1.     Whether the Regents Are Immune

"Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (citations omitted). To determine whether a governmental agency is an arm of the state, courts must examine the following factors: "whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity." *Id.* Courts look to the way state law treats the entity to determine these factors. *Id.*

Plaintiff asserts that defendants have not established that any of the *Mitchell* factors weigh

in favor of them.  Dkt. No. 49 at 11.  Plaintiff acknowledges that the Regents are generally considered state actors in case law, but contends that the first *Mitchell* factor weighs the other way in this case.  *Id.*  Plaintiff points to no case law indicating that the Regents are not an arm of the state for purposes of Eleventh Amendment immunity, and the Ninth Circuit has made clear that "the University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment."  *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982); *see also Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992) ("The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983"); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) ("It has long been established that [University of California at Los Angeles] is an instrumentality of the state for purposes of the Eleventh Amendment"); *Regents of the University of California v. Doe*, 519 U.S. 425, 431 (1997) ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant"); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding on remand that because "the element of State liability is the single most important factor in determining whether an entity is an arm of the state . . . we conclude that the University [of California] is an arm of the State of California" and "immune from suit in federal court by reason of the Eleventh Amendment"); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d at 198, 201 (9th Cir. 1988) (holding that "California cases demonstrate that California state colleges and universities are 'dependent instrumentalities of the state'" and that under California law, the Los Angeles Community College District is a state entity that possesses Eleventh Amendment immunity from section 1983 claims for damages and injunctive relief).  Plaintiff's claims against the Regents of the University of California are thus dismissed on this basis.

## 2.  Whether the Individual Defendants Are Immune

"Eleventh Amendment immunity extends to actions against state officers sued in their official capacities because such actions are, in essence, actions against the governmental entity of

which the officer is an agent." *Jackson*, 682 F.2d at 1350 (9th Cir. 1982).  However, "state officials sued in their individual capacities are 'persons' for purposes of § 1983." *Hafer v. Melo*, 502 U.S. 21, 23 (1991).  While suits against state officials in their official capacity are treated as suits against the State, personal-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* at 25.  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (citations and internal quotation marks omitted) (emphasis in original). "'Acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26.  A "suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden v. Maine*, 527 U.S. 706, 757 (1999).  Officials "sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer*, 502 U.S. at 25.

Although there is some inconsistency throughout the complaint, drawing all inferences in plaintiff's favor, the Court finds it sufficiently clear that plaintiff is suing Orr and the individual UCSF defendants in both their individual and official capacities.  *See* Compl. ¶¶ 17-21, 23.  The Eleventh Amendment does not bar a suit against these individual defendants in their individual capacities.  *See id.* at 31 ("Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court").  All claims against the individual defendants in their official capacities are dismissed based on Eleventh Amendment immunity.[9]

---

[9] Orr contends that the complaint contains no factual allegations that would support the contention that he acted in any capacity other than his official capacity as Legal Director of the UCSF Center.  Dkt. No. 32 at 13, 4 n.2, 8 n.3.  However, Orr cites no legal authority in support of his position that this means plaintiff cannot sue him in his individual capacity.

1    **C.      Whether Plaintiff's Section 1983 Claims Are Time Barred**

2        Claims under 42 U.S.C. § 1983 filed in California are governed by California's two-year

3    statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

4    Plaintiff alleges that he first learned about the implant procedure on October 18, 2021 via e-mail.

5    Compl. ¶ 91, Ex. C. He filed suit on October 18, 2023, exactly two years later. Plaintiff's section

6    1983 causes of action are thus not time barred.

7

8    **D.      Whether Plaintiff's First Cause of Action (Violation of Substantive Due Process**

9           **Rights) is Adequately Pled**

10       It is undisputed that Orr and the individual UCSF defendants are state actors. Thus, as to

11   these defendants, the Court must reach the issue of whether plaintiff has adequately pled a

12   substantive due process claim. Plaintiff alleges a violation of his "fundamental right to parent."

13   Compl. ¶ 1. The Supreme Court has declared that parents have a "fundamental right . . . to make

14   decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S.

15   57, 66 (2000).

16       Plaintiff alleges that defendants intentionally violated the child custody order, which in turn

17   violated his constitutional right to direct the upbringing of his child. Compl. ¶ 61. The Court finds

18   it premature to determine whether a violation of the custody order, if proven, would rise to the level

19   of a violation of plaintiff's constitutional right "to make decisions concerning the care, custody, and

20   control" of his child and declines to dismiss on this basis at the pleadings stage.

21

22   **E.      Whether Plaintiff's Claims Are Time Barred Under MICRA**

23       The UCSF defendants contend that plaintiff's cause of action for violation of the Fourteenth

24   Amendment and many of his state law claims are barred by the California's Medical Injury

25   Compensation Reform Act ("MICRA")'s one-year statute of limitations. Dkt. No. 36 at 22. "Unlike

26   most other personal injury actions, professional negligence actions against health care providers

27   must be brought within 'three years after the date of injury or one year after the plaintiff discovers,

28   or through the use of reasonable diligence should have discovered, the injury, whichever occurs

United States District Court
Northern District of California

first.'" *Flores v. Presbyterian Intercommunity Hosp.*, 63 Cal. 4th 75, 79 (2016) (quoting Cal. Civ. Proc. Code § 340.5).[10]  "When a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA."  *Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507, 1514 (2005).  Courts must look past the labels the plaintiff uses and examine the specific conduct alleged to determine what limitation period applies.  *Larson v. UHS of Rancho Springs, Inc.*, 230 Cal. App. 4th 336, 340 (2014).  The parties dispute whether plaintiff's claims sound in professional negligence.

The California Code of Civil Procedure defines "professional negligence" as:

> [A] negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Civ. Proc. Code § 340.5.  The MICRA statute of limitations "applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients."  *Flores*, 63 Cal. 4th at 88.

Defendants contend that the crux of plaintiff's Fourteenth Amendment claim "relates to obtaining adequate informed consent before a minor undergoes a medical procedure" and consequently "the nature of plaintiff's case arises out of the tort of professional negligence as it relates to consent for a medical procedure and is therefore governed by MICRA."  Dkt. No. 36 at 23.  Plaintiff contends that his claims against defendants are not professional negligence claims. Dkt. No. 49 at 13.  The Court agrees with plaintiff that his claims do not sound in professional negligence as defined in section 340.5.  All the cases the parties cite involve injury to a patient while receiving medical care.  Plaintiff does not allege any injury resulting from negligence in the rendering of health care services; rather, he claims injury resulting from "Defendants' scheme to

---

[10] Personal injury actions "generally must be filed within two years of the date on which the challenged act or omission occurred."  *Flores*, 63 Cal. 4th at 79 (citing Cal. Civ. Proc. Code §335.1).

United States District Court
Northern District of California

perform gender identity related surgery on a minor child without obtaining the necessary consent." Compl. ¶ 14.  Defendants' attempt to expand the definition of "professional negligence" does not find support in the case law.  The Court thus finds that the MICRA statute of limitations does not apply to plaintiff's claims as pled.  With respect to the federal claims, the Ninth Circuit has also held that claims for violations of federal constitutional rights pursuant to 42 U.S.C. § 1983 are not subject to MICRA.  *Ellis v. City of San Diego, Cal*., 176 F.3d 1183, 1191 (9th Cir. 1999).

### F.    Whether Plaintiff Has Adequately Pled a Fourteenth Amendment Due Process Violation

To state a procedural due process claim, a plaintiff must allege that there was "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  "[T]the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis removed).

Plaintiff contends that defendants deprived him of his "constitutional parental rights" without a notice and a hearing by "secretly submitting [his] minor child to surgery without [his] consent."  Dkt. No. 49 at 16.  Defendants contend that a hearing is only required when the state compels the medical care without parental consent and plaintiff has failed to allege facts showing defendants compelled Minor to receive medical treatment.  Dkt. No. 36 at 21; Dkt. No. 58 at 12. "Courts have characterized the right to familial association as having both a substantive and procedural component."  *Keates v. Koile*, 883 F.3d 1228, 1236 (2018).  As discussed above, plaintiff has pled a violation of his fundamental liberty interest "to make decisions concerning the care, custody, and control" of his child.  *See Troxel*, 530 U.S. at 66.  The question here is whether plaintiff has plausibly alleged that he was denied adequate procedural protections.

In support of his position, plaintiff points to *Mueller v. Auker*, which held on appeal of summary judgment that parents "generally have a procedural right to a judicial hearing if the State

seeks to compel their minor child to undergo a medical treatment over their objection." 576 F.3d 979, 995 (9th Cir. 2009). The court further held that this right "is not absolute" and when the State has "reasonable cause to believe that the child is in imminent danger . . . a State has the authority without prior judicial authorization to compel a minor child to undergo specific medical treatment over parental objections." *Id.* (citation omitted). The facts and circumstances of *Mueller* are manifestly distinguishable from those of the instant case. In *Mueller*, the mother of a five-week-old infant consented to the performance of certain medical procedures for her infant, but not others. *Id.* at 983. In response to her refusal to consent to the procedures recommended by the doctors, a doctor contacted the hospital social worker, who decided to contact Child Protective Services ("CPS") and law enforcement. *Id.* at 984. A police detective spoke to the mother on three different occasions and attempted to convince her to consent to the treatment; each time she refused, without consulting her husband. *Id.* at 985. Later, after the infant's temperature rose to 101 degrees, a police detective informed the mother that he was declaring the child in imminent danger and turning her over to State custody. *Id.* Soon thereafter, a police detective presented the mother with a written notice of a post-deprivation hearing. *Id.* After obtaining consent from CPS, doctors performed the medical procedure. *Id.* at 986.

In contrast, here there are no allegations plausibly suggesting that any of the state actor defendants *compelled Minor* to undergo the implant procedure. To the contrary, the marriage dissolution proceeding documents that the Court has taken judicial notice of suggest that Minor wanted to seek medical treatment. *See* Dkt. No. 37-1, Ex. A at ECF 25.

The other cases plaintiff cites do not support his position that he was denied procedural protections that were due here. *Keates* involved claims stemming from CPS's actions to remove a minor child from her mother's custody following the minor's hospitalization for depression and suicidal ideation. 883 F.3d at 1232. There, the Ninth Circuit held that "the rights of parents and children to familial association . . . are violated if a state official removes children from their parents without their consent, and without a court order" unless there is reasonable cause to believe the child is in imminent danger. *Id.* at 1237-38. *Ram v. Rubin* similarly held that it is unlawful to take a child into state custody and interfere with a parent's custodial rights without notice and a hearing unless

18

the child is in imminent danger of harm.  118 F.3d 1306, 1310 (9th Cir. 1997).  Here, Minor was never taken into state custody.

The Court further concludes from the extensive exhibits attached to the complaint that this deficiency could not be cured with the pleading of additional facts, and thus dismisses the Fourteenth Amendment procedural due process claim against all the defendants without leave to amend.

* * *

In sum, plaintiff's first cause of action, a section 1983 claim for violation of his substantive due process rights, is dismissed with leave to amend as to defendants Harkins, Bigger, and Underhill on the basis that they are not *de facto* state actors and is not dismissed as to defendant Orr (in his individual capacity) and the individual UCSF defendants (in their individual capacities).  All claims against the Regents are dismissed based on Eleventh Amendment immunity.  Plaintiff's second cause of action for a violation of his procedural due process rights is dismissed without leave to amend as to all defendants for failure to state a claim.  Because the Court does not dismiss all the federal claims, the Court will address whether plaintiff has adequately pled his state law causes of action.

### III.    State Law Claims

#### A.    Arguments Raised by Defendant Orr and the UCSF Defendants

Orr contends that the alleged communication between him and UCSF had a "reasonable connection" to the state court proceedings, and is therefore "absolutely privileged under Civil Code section 47(b)."  Dkt. No. 32 at 10.

The section 47(b) "litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding."  *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 888-89 (2011).  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).  "The privilege is not limited to statements made during a trial or other

United States District Court
Northern District of California

proceedings, but may extend to steps taken prior thereto, or afterwards." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (internal quotation marks and citation omitted).  To be privileged, a statement must be "reasonably relevant" to pending or contemplated litigation.  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008).  The privilege applies to all torts except malicious prosecution.  *Silberg*, 50 Cal. 3d at 212.  The purposes of the privilege "are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation."  *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 955 (2007) (citation and internal quotation marks omitted).  "Another purpose is to promote effective judicial proceedings by encouraging full communication with the courts."  *Id.* (citation and internal quotation marks omitted).

The Court cannot find the alleged statements made by Orr privileged under section 47(b) as a matter of law.  Plaintiff alleges that Orr "accepted money in exchange for advising [d]efendants that unconsented gender identity related surgery on a minor was legal."  Compl. ¶¶ 22-23, 77.  Orr was not involved in the state court marital dissolution and child custody proceedings.  Nor were the UCSF defendants.  Orr allegedly offered legal advice related to the child custody order after it had been entered by the state court.  The litigation privilege "does not apply to statements made outside of the courtroom to nonparties unconnected to the proceedings."  *Begier v. Strom*, 46 Cal. App. 4th 877, 882 (1996).  Furthermore, the statements allegedly made by Orr do not clearly fit within the purposes of the privilege as enunciated by the California Supreme Court.

Orr contends in his reply that the "reasonable inference" is that Orr's "alleged advice to the Regents was given with the contemplation that [plaintiff] would take legal action if the Supprelin hormone therapy constituted a violation of the state court custody order" such that any alleged statements were prelitigation statements made in connection with a proposed litigation.  Dkt. No. 57 at 3-4.  California courts "have held a prelitigation statement is protected by the litigation privilege . . . when the statement is made in connection with a proposed litigation that is contemplated in good faith and under serious consideration."  *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997) (citations and internal quotation marks omitted).  There is no indication in plaintiff's

United States District Court
Northern District of California

20

complaint that there was "proposed litigation" when Orr gave the alleged legal advice to the UCSF Center, and a "bare possibility" of litigation is not enough for the privilege to apply. *See Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 33 (1997) ("the 'bare possibility' that a judicial proceeding 'might be instituted' in the future 'is not to be used as a cloak to provide immunity' for fraud or other tortious conduct when the possibility has not ripened into a *proposed* judicial proceeding that is contemplated in good faith and under serious consideration") (quoting Rest. 3d Torts § 588).

Orr separately contends that except for the cause of action for fraud by concealment, plaintiff's state law causes of action against him are barred by the one-year statute of limitations in California Code of Civil Procedure section 340.6. Dkt. No. 32 at 11. Section 340.6 provides that:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Cal. Civ. Proc. Code § 340.6(a). The California Supreme Court has held that section 340.6(a)'s time bar "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." *Lee v. Hanley*, 61 Cal. 4th 1225, 1237-38 (2015). A "professional obligation" is "an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which the attorney has entered, and the obligations embodied in the Rules of Professional Conduct." *Id.* at 1237. "[T]he question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." *Id.* at 1238. There is no requirement in the statute that the plaintiff was a client of the attorney. *Yee v. Cheung*, 220 Cal. App. 4th 184, 195 (2013). Orr has not explained how the merits of plaintiff's claims depend on proof that Orr violated a professional obligation, nor what that professional obligation was. The Court thus cannot conclude as a matter of law on the pleadings that section 340.6(a) bars plaintiff's claims.

Orr and the individual UCSF defendants contend that plaintiff's claim for fraud by concealment is barred by California Government Code § 822.2.  Dkt. No. 32 at 14; Dkt. No. 36 at 24.  This code section provides: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation . . . unless he is guilty of actual fraud, corruption or actual malice."  Cal. Gov. Code § 822.2.  The Government Code does not define "misrepresentation," but California courts "have assumed that the immunity includes all types of fraud and deceit cases, including fraudulent concealment."  *Adkins v. State of California*, 50 Cal. App. 4th 1802, 1818 (1996) (internal quotation marks and citations omitted).  Immunity under this statute is "not absolute" and "applies only when the negligent or intentional wrongdoing involves interferences with financial or commercial interests."  *Id.* (citations omitted).  It "does not apply to misrepresentations involving risk of physical harm."  *Id.* (internal quotations marks and citation omitted).

Although plaintiff emphasizes the financial nature of the conduct—that the defendants accepted money in furtherance of their "scheme"—he has alleged emotional harm to himself in additional to actual damages for his expenses.  The Court cannot conclude as a matter of law on the pleadings that the harm plaintiff alleges he suffered involved an interference with his financial or commercial interests so as to be covered by § 822.2.  *See Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App. 3d 859, 872 (1988) ("Although appellants suffer a financial loss in the sense that they have incurred, and will continue to incur, substantial medical expenses, their loss did not result from a commercial transaction with the County nor from the County's interference with a commercial transaction.").

### B.     Whether the State Law Causes of Action Should Be Dismissed for Failure to State a Claim

Defendants all argue that the state law claims should be dismissed due to failure to allege sufficient facts or failure to plead all required elements.  The Court will now evaluate each state law claim in turn.

1

### 1.      Fraud by Concealment (Third Cause of Action)

Plaintiff alleges that defendants "concealed their plan under which gender identity related surgery was to be performed" on Minor without his consent and agreed to "conceal the plan" from plaintiff.  Compl. ¶ 89.  Plaintiff further alleges that defendants "actively prevented" him from "discovering the scheme."  *Id.* ¶ 90.  The required elements of fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact."  *Broge v. ALN Int'l, Inc.*, No. 17-CV-07131-BLF, 2018 WL 2197524, at *4 (N.D. Cal. May 14, 2018) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605-06 (2014)).

"There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014) (internal quotation marks and citation omitted).  "The first circumstance requires a fiduciary relationship; each of the other three 'presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise.'"  *Deteresa v. American Broadcasting Companies, Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997)).  "Such relationships 'are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.'"  *Id.* (quoting *LiMandri*, 52 Cal. App. 4th at 543-44).  Examples are "seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual relationship."  *Id.* (quoting *LiMandri*, 52 Cal. App. 4th at 337).

Plaintiff alleges no transaction or relationship with any of the defendants that could give rise to a duty to disclose.  Furthermore, the Court finds that as to the attorney defendants—Harkins,

United States District Court
Northern District of California

Bigger, and Orr—there exists no relationship between them and plaintiff that could give rise to such a duty, even if additional facts were plead.  Harkins, Bigger, and Orr were attorneys representing other parties; they had no relationship at all with plaintiff.  *See LiMandri*, 52 Cal. App. 4th at 338 (noting that an attorney's duty of undivided loyalty to his client supersedes any duty to disclose information to the plaintiff).  As to the individual UCSF defendants and Underhill, plaintiff offers only conclusory allegations, devoid of specific facts.  Accordingly, the motion to dismiss is granted as to plaintiff's fraudulent concealment claim, without leave to amend as to Bigger, Harkins, and Orr, and with leave to amend as to the individual UCSF defendants and Underhill.  Because this is a fraud claim, plaintiff must meet the heightened pleading standard of Rule 9(b) in any amended complaint. [11]

### 2. Medical Battery and Civil Conspiracy to Same (Fourth Cause of Action)

Battery is "an intentional and offensive physical touching of a person who has not consented to the touching."  *Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 107 Cal. App. 4th 1260, 1266-67 (2003).  "It is well settled that a physician who performs a medical procedure without the patient's consent commits a battery irrespective of the skill or care used."  *Id.* at 1266-67.  Medical battery also occurs where "a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not required."  *Cobbs v. Grant*, 8 Cal. 3d 229, 239 (1972).

Defendants contend that plaintiff lacks standing for this claim because he was not the patient.  Dkt. No. 36 at 27; Dkt. No. 57 at 12.  Plaintiff contends in opposition to one of the motions that at

---

[11] Orr contends that this claim also fails because plaintiff does not claim to suffer economic damages aside from those associated with his claimed emotional distress.  Dkt. No. 57 at 10.  Plaintiff pleads that he suffered emotional distress as well as financial harm due to the money he expended as "treatment for his emotional distress."  Compl. ¶¶ 95, 97. "Although damages for emotional distress can be recovered in a fraud cause of action, such damages have been allowed only as an aggravation of other damages."  *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1269 (1989).  The cases the parties cite do not make clear whether or not the damages plaintiff alleges preclude a fraud claim at the pleadings stage, so the Court declines to dismiss on this basis.

United States District Court
Northern District of California

the time Minor was a minor, so parental consent was required.  Dkt. No. 49 at 23-24.  Plaintiff cites *Orianthi v. St. Francis Med. Ctr.*, 2021 Cal. Super. LEXIS 92373 (Los Angeles County Superior Court May 25, 2021) in support.  There, the complaint alleged that an infant did not consent and was silent as to whether any parent or guardian consented to the touching.  *Id.* at *4.  The court noted that a "newborn infant cannot directly consent or withhold consent."  *Id.*  Even if parental consent were required in this case, the exhibits attached to the complaint make clear that a parent, Minor's mother, did consent to the procedure.  Plaintiff does not, and cannot allege that a medical procedure was performed on him.  Accordingly, the Court finds that plaintiff cannot state a medical battery claim.  The Court dismisses this claim against all defendants without leave to amend.

### 3.    Intentional Infliction of Emotional Distress ("IIED") and Civil Conspiracy to Same (Fifth Cause of Action)

The elements of a prima facie case of IIED are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 461 (1977) (internal quotation marks and citation omitted).  To be "outrageous," the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society," "of a nature which is especially calculated to cause, and does cause, mental distress."  *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160 (2014); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 n.7 (1987).  "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."  *Fuentes v. Perez*, 66 Cal. App. 3d 163, 172 (1977).  "Severe emotional distress" means "emotional distress of such substantial quality and enduring quality that no reasonable [person] in civilized society should be expected to endure it."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (citation and internal quotation marks omitted).

Plaintiff has insufficiently pled that defendants intended to cause, or recklessly disregarded

a probability of causing, him emotional distress.  The Court further finds that defendants' alleged conduct was not "outrageous."  The custody order states that Minor "shall be permitted to pursue the services provided by UCSF as to [Minor's] gender identity, and shall be permitted to commence hormone therapy, if recommended by UCSF."  Compl, Ex. A at ECF 7.  It further states that Minor "will not be permitted to undergo any gender identity related surgery until they are 18 years of age, absent written agreement from both parties . . . or an order of the court."  *Id.*  Plaintiff's allegations and the extensive exhibits attached to his complaint indicate that the parties were in the midst of a family law dispute, UCSF had the state court custody order, and UCSF received legal advice about whether the implant procedure was permissible under the custody order.  Having carefully considered the language in the child custody order, the documents attached to plaintiff's complaint, and the state court marriage dissolution and child custody proceedings record, the Court finds that the implant procedure could reasonably interpreted to be hormone therapy and not gender identity related surgery.  As previously indicated, it is inappropriate for the Court to make a final determination on this issue on the pleadings.  However, even if it is ultimately determined on the merits that the procedure was "gender identity related surgery" under the custody order, given the above considerations the conduct alleged is simply not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (citing Rest. 2d Torts § 46).  The Court finds that this deficiency in the complaint cannot be cured by amendment and dismisses the IIED claim as to all defendants without leave to amend.

### 4.    Negligent Infliction of Emotional Distress ("NIED") (Sixth Cause of Action)

California courts treat NIED as a form of the tort of negligence with the following elements: "(1) duty; (2) breach of duty; (3) causation; (4) and damages."  *Redd-Oyedele v. Santa Clara Cnty. Off. of Educ.*, No. 20-CV-00912-SVK, 2020 WL 7319404, at *4 (N.D. Cal. Dec. 11, 2020); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).  "Whether a defendant owes a duty of care is a question of law."  *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588

(1989).  The California Supreme Court has indicated that when considering the existence of a duty, several factors "require consideration" including:

> the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Christensen v. Superior Court*, 54 Cal. 3d 868, 885-86 (1991) (internal quotation marks and citation omitted).

In California, the right to recover for emotional distress in an NIED claim "was initially limited to plaintiffs who suffered physical injury . . . with accompanying emotional distress," or plaintiffs who "were in the 'zone of danger' and suffered emotional trauma resulting in physical injury." *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 107 (1992) (citing *Thing v. La Chusa*, 48 Cal. 3d 644, 651 (1989).  "In 1968, the [California] Supreme Court expanded the right to recover emotional distress damages to foreseeable 'bystanders' who suffered emotional distress resulting in physical injury a result of witnessing an injury to another." *Id.* (citing *Dillon v. Legg*, 68 Cal. 2d 728 (1968)).  "In 1980, the [California] Supreme Court again broadened the theory of recovery for emotional distress to 'direct victims' who were owed a duty by the defendant and who suffered emotional distress which was not accompanied by any physical injury." *Id.* at 107-08 (citing *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 2d 916 (1980).  "In a direct victim case, a plaintiff seeks damages for emotional distress resulting from a breach of duty owed the plaintiff which is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *Id.* (quoting *Marlene F.*, 48 Cal. 3d at 590)); *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).  In direct victim cases, the limits on bystander cases have no direct application and well-settled principles of negligence are invoked. *Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182, 206 (2012).  Plaintiff indicates in opposition to Orr's motion that he is proceeding on a direct victim theory.  Dkt. No. 50 at 22.[12]

---

[12] Plaintiff cannot plausibly allege a bystander theory of liability because, even if the implant

27

Plaintiff alleges that he was owed a duty by defendants to "refrain from performing gender identity related surgery on the minor" without his consent and that defendants breached their duty to plaintiff by "willfully violating the no surgery injunction" in the state court order.  Compl. ¶¶ 124-125.  This does not sufficiently allege that any of the defendants owed plaintiff a duty of care imposed on them as a matter of law or that arises out of the relationship between plaintiff and defendant.  As to Harkins, Bigger, and Orr, the Court further finds that plaintiff cannot allege that these defendants owed him a duty of care because plaintiff was not their client, nor the third party in a transaction that was intended to benefit him.  *See Skarbrevik v. Cohen*, 231 Cal. App. 3d 692, 702 (1991); *see also Goodman v. Kennedy*, 18 Cal. 3d 335, 344 (1976) ("To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role"); *Mason v. Levy & Van Bourg*, 77 Cal. App. 3d 60, 66 (1978) ("It is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his clients.  This loyalty should not be diluted by a duty owed to some other person[.]").  The NIED claims against Harkins, Bigger, and Orr are thus dismissed without leave to amend.  As to the individual UCSF defendants and Underhill, the law is less clear, and although plaintiff has alleged insufficient facts, the Court cannot conclude that this deficiency could not be cured by amendment, so grants leave to amend.  *Cf. Schwarz v. Regents of University of California,* 226 Cal. App. 3d 149, 159 (1990).

## IV.     Plaintiff's Request for a Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

---

procedure resulted in "injury" to Minor, plaintiff cannot allege that he observed the procedure or was present at the scene of "injury" when he has alleged that he did not become aware of the procedure until months later.  *See* Compl. ¶ 91; *Christensen*, 54 Cal. 3d at 884-85; *Schwarz v. Regents of University of California*, 226 Cal. App. 3d 149, 159 (1990).

United States District Court
Northern District of California

28 U.S.C. § 2201.  Plaintiff requests this Court issue a declaratory judgment "that a valid Court Order enjoining gender identity related surgery for a minor child without the parent's consent shall hereafter be considered a fundamental constitutional right, because it derives from the fundamental right to family unity found in the liberty clause of the 14th Amendment."  Compl. ¶ 136.

Such a liberty interest has never before been declared by the Supreme Court, and this Court declines to do so in this case.  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co*., 505 U.S. 277, 282 (1995), cited in *Takeda Pharmaceutical Co., Ltd. v. Mylan, Inc.,* 62 F. Supp. 3d 1115, 1122 (N.D. Cal. 2014).  Plaintiff's request for a declaratory judgment as articulated in paragraph 136 of his complaint is dismissed without leave to amend.

## CONCLUSION

For the forgoing reasons and for good cause shown, the Court GRANTS IN PART AND DENIES IN PART defendants' motions.  All claims against the Regents, Orr in his official capacity, and Lee, Ehrensaft, and Rosenthal in their official capacities are dismissed without leave to amend based on Eleventh Amendment immunity.  The Fourteenth Amendment procedural due process claim (second cause of action), medical battery claim (fourth cause of action), and IIED claim (fifth cause of action) are dismissed without leave to amend as to all defendants for failure to state a claim. The fraud by concealment claim (third cause of action) and NIED claim (sixth cause of action) are dismissed without leave to amend as to defendants Harkins, Bigger, and Orr.

The section 1983 substantive due process claim (first cause of action) is dismissed with leave to amend as to Harkins, Bigger, and Underhill on the basis that they are not *de facto* state actors. The fraud by concealment claim (third cause of action) and NIED claim (sixth cause of action) are dismissed with leave to amend as to Underhill, Lee, Ehrensaft, and Rosenthal for failure to allege the required elements and failure to plead sufficient facts.

The motions to dismiss the section 1983 substantive due process claim (first cause of action) are DENIED as to Orr, Lee, Ehrensaft, and Rosenthal in their individual capacities.  However, these

defendants may raise qualified immunity defenses in subsequent proceedings.

   **Any amended complaint must be filed no later than August 30, 2024.**


   **IT IS SO ORDERED**.

Dated: August 20, 2024

_____
SUSAN ILLSTON
United States District Judge