1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    EDWARD ALLYN HUDACKO,                    Case No. 23-cv-05316-SI

8                   Plaintiff,

9           v.                                **ORDER RE: MOTIONS TO DISMISS**

10   JANET YI MAN LEE, et al.,                Re: Dkt. Nos. 96-100

11                  Defendants.

12

13          On November 15, 2024, the Court held a hearing on defendants' motions to dismiss the

14   Second Amended Complaint ("SAC"). For the reasons set forth below, the Court GRANTS the

15   motions to dismiss all causes of action.

16

17                                        **BACKGROUND**

18          Before the Court are several motions to dismiss plaintiff's Second Amended Complaint

19   ("SAC"). Dkt. Nos. 96-100. Plaintiff filed the SAC on August 30, 2024. Dkt. No. 90 ("SAC") at

20   1. Plaintiff repeats many allegations from the First Amended Complaint[1] (Dkt. No. 19 ("FAC")) in

21   the SAC against the seven remaining defendants in this case: Rosenthal (University of California,

22   San Francisco ("UCSF") medical doctor specializing in endocrinology), Lee (UCSF medical doctor

23   specializing in pediatric endocrinology), Ehrensaft (UCSF clinical psychologist), Orr (Legal

24   Director of Child and Adolescent Gender Center at UCSF), Bigger (attorney representing Underhill

25   in the family law case), Harkins (attorney representing Minor in the family law case), and Underhill

26   (plaintiff Hudacko's ex-wife and mother of Minor). SAC ¶¶ 21-27.

27   ─────────────────────────

28          [1] The Court's previous order contains a summary of the FAC allegations. Dkt. No. 86.

In 2020, plaintiff and his ex-wife Underhill litigated a "high conflict" family law case in the Contra Costa County Superior Court.  SAC ¶ 71; SAC, Ex. A at 3.  A major disagreement in the case involved Underhill's belief "that [Minor][2] suffered from the psychological condition of 'gender dysphoria'" and wanted to "medically 'transition' [Minor]'s male appearance to that of a female's appearance."  SAC ¶ 71.  Plaintiff "opposed any form of 'gender affirming care'" for Minor, including medical transition, hormones, and/or puberty blockers.  *Id.* ¶ 20.  On August 26, 2020, the Contra Costa County Superior Court granted Underhill legal custody of Minor and authorized Underhill to "make decisions on her own for [Minor's] health, education and welfare without Father's consent."  SAC, Ex. A at 6.  The custody order includes two provisions pertaining to gender identity related medical procedures.  SAC ¶ 76.  Section 7a states: "[Minor] shall be permitted to pursue the services provided by UCSF as to the Minor Child's gender identity, and shall be permitted to commence hormone therapy, if recommended by UCSF."  *Id.*  Section 7b states "[Minor] will not be permitted to undergo any gender identity related surgery until they are 18 years of age, absent a written agreement by both parties, Christine Hudacko [Underhill] and Edward Hudacko, or an order of the court."  *Id.* ¶ 77.  Plaintiff alleges defendants violated Section 7b on August 4, 2021, when Minor underwent a Supprelin Implant procedure, listed on a bill as a "surgery."[3]  *Id.* ¶ 104; SAC, Ex. D at 16.

While the SAC involves the same general events as the FAC, the SAC includes additional allegations. The new allegations center around the World Professional Association for Transgender Health ("WPATH"),[4] and what plaintiff refers to as the "True WPATH Mission," the "Playbook," and the "Scheme."  SAC ¶¶ 34-35.  Plaintiff alleges Rosenthal, Ehrensaft, and Lee are all members of WPATH, and Rosenthal is an elected member of WPATH's Board of Directors.  *Id.* ¶¶ 6, 46, 48.  Plaintiff further alleges:

---

[2] "Minor" refers to Hudacko and Underhill's oldest child who was a minor at the time of the events.  The Court continues to use "Minor" for consistency with previous orders.

[3] The Court's previous order said whether the implant was "gender identity related surgery" or "hormone therapy" will be determined on the merits, not at the pleadings stage.  Dkt. No. 86 at 7.

[4] WPATH is not named as a defendant.

> [t]he TRUE WPATH MISSION is at least three-fold: First, by overstating the alleged risks of "untreated" gender dysphoria or gender related distress, and maximizing the profit of gender clinics by maximizing the number of people – especially children and adolescents – who seek "gender affirming care." Second, by falsely proclaiming psychological benefits and fraudulently concealing the known and suspected physical and mental harms caused by these procedures, maximize the number of subjects unwittingly enrolled into experimental protocols purportedly studying their long-term effects. Third, to create a population of young adults who are chronologically over 18 (thus legally able to consent to sex), but who physically, mentally and emotionally remain child-like.

*Id*. ¶ 45. Plaintiff alleges the members of WPATH advance the "True WPATH Mission" through the "Playbook" which includes "dishonest and/or misleading contentions and/or misrepresentations of fact, regarding the purported safety and efficacy of employing GENDER-AFFIRMING CARE on children." *Id*. ¶ 35. Plaintiff alleges all defendants were part of a "Scheme" consistent with the "Playbook" to perform surgery on Minor without Hudacko's consent. *Id*. ¶ 39. Plaintiff alleges defendants were aware of Section 7b of the custody order and agreed to conceal the plan from Hudacko as part of the "Scheme." *Id*.

The SAC also alleges plaintiff obtained a recording of a continuing legal education seminar titled "Gender and Transgender Issues" featuring defendant Orr and attended by defendant Harkins. *Id*. ¶ 58. Plaintiff alleges the seminar was intended to advance the "True WPATH Mission" by teaching attorneys the "Playbook" so that the parent opposing a minor's gender transition "always loses." *Id*. ¶¶ 59, 66.

The FAC included seven causes of action. Dkt. No. 19 at 1. The Court's prior order dismissed all claims against the Regents of the University of California and the UCSF affiliated defendants (Orr, Lee, Ehrensaft, and Rosenthal) in their official capacities based on Eleventh Amendment immunity. Dkt. No. 86 at 29. The Court dismissed the Fourteenth Amendment procedural due process claim, medical battery claim, and intentional infliction of emotional distress claim without leave to amend as to all defendants for failure to state a claim. *Id*. The Court dismissed the fraud by concealment claim and negligent infliction of emotional distress (NIED) claim without leave to amend as to Harkins, Bigger, and Orr, but with leave to amend as to Underhill, Lee, Ehrensaft, and Rosenthal. *Id*. The motion to dismiss the § 1983 substantive due process claim was denied as to Orr, Lee, Ehrensaft, and Rosenthal in their individual capacities, but the Court

1    noted these defendants could raise a qualified immunity defense in subsequent proceedings. *Id.* The

2    § 1983 substantive due process claim was dismissed with leave to amend as to Harkins, Bigger, and

3    Underhill on the basis they were not *de facto* state actors. *Id.*

4        The SAC includes three causes of action: (1) the substantive due process claim under 42

5    U.S.C. § 1983, (2) fraud by concealment, and (3) NIED. SAC at 24-28. The present motions

6    cumulatively argue that all causes of action should be dismissed as to all defendants for lack of

7    jurisdiction or failure to state a claim. Dkt. Nos. 96-100.

8

9                                 **LEGAL STANDARD**

10       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if

11   it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

12   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

13   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires

14   the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

15   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened

16   fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the

17   speculative level." *Twombly*, 550 U.S. at 555, 570.

18       In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

19   court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

20   in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However,

21   the court is not required to accept as true "allegations that are merely conclusory, unwarranted

22   deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049,

23   1055 (9th Cir. 2008) (citation and internal quotation marks omitted). A pleading must contain

24   allegations that have "factual content that allows the court to draw the reasonable inference that the

25   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard

26   is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

27   has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 556).

28       Dismissal under Rule 12(b)(6) is also proper when the complaint "lacks a cognizable legal

United States District Court
Northern District of California

4

theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Exhibits attached to the complaint, documents incorporated by reference, and matters properly subject to judicial notice are considered when reviewing the sufficiency of a complaint. *In re NVIDIA Corp. Security Litigation*, 768 F.3d 1046, 1051 (9th Cir. 2014). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.    Requests for Judicial Notice

Plaintiff requests judicial notice of facts related to (1) the Tuskegee syphilis study, (2) Project MKULTRA, (3) the National Institutes of Health Sexually Transmitted Disease experiments in Guatemala, (4) the practice of lobotomy, (5) the Leo Stanley experiments, (6) the Nazi medical experiments, (7) defendant Rosenthal's declaration in *Boe v. Marshall*, (8) Alabama's reply brief in *Boe v. Marshall*, (9) Alabama's amicus curiae brief to the U.S. Supreme Court in *L.W. v. Skrmetti*, and (10) Harkin's report in family court. Dkt. No. 105-1. UCSF defendants Ehrensaft, Rosenthal, and Lee request judicial notice of (1) the fact that Minor is no longer a minor, and (2) the state court custody order, available at Docket Number 90, SAC, Ex. A 4-9. Dkt. No. 101-1 at 1-2.

Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Rule 201 applies to adjudicative facts and not legislative facts. According to the Advisory Committee, adjudicative facts "are simply the facts of the particular case," in other words, the "facts concerning the immediate parties—who did what, where, when, how and with what motive or intent." *See* Fed. R. Evid. 201 (note to subdivision (a) for 1972 proposed rules). On the other hand, legislative facts "are those which have relevance to

United States District Court
Northern District of California

legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." *See id.*

### A.      Plaintiff Requests 1-6 (Historical Medical Experiments)

Plaintiff requests judicial notice of various historical medical experiments and studies. Dkt. No. 105-1 at 2-5. Plaintiff claims the relevance of such studies is to show "the plausibility of a conspiracy to use deception in the practice of involuntary human medical experimentation in the United States." *Id.* The Court DENIES the request for judicial notice of (1) the Tuskegee syphilis study, (2) MKULTRA, (3) the NIH STD experiments in Guatemala, (4) the practice of lobotomy, (5) the Leo Stanley experiments, (6) the Nazi medical experiments pursuant to Rule 201 because the fact that these studies exist does not concern the "immediate parties" of this case. Further, five of the six sources cited by plaintiff are Wikipedia pages, not "sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).

### B.      Plaintiff Requests 7-9 (Documents From *Boe v. Marshall* and *L.W. v. Skrmetti*)

Plaintiff seeks judicial notice of legal papers filed in two cases from other jurisdictions "to demonstrate the existence of material factual disputes regarding the purported safety and efficacy of puberty blockers." Dkt. No. 105-1 at 6-7. The Court does not need to take judicial notice of legal arguments filed in other courts. The Court DENIES the request for judicial notice of (7) defendant Rosenthal's declaration in *Boe v. Marshall*, (8) Alabama's reply brief in *Boe v. Marshall*, and (9) Alabama's amicus curiae brief to the U.S. Supreme Court as these documents are irrelevant to the current parties and proceeding.

### C.      Plaintiff Request 10 (Harkins Report)

Plaintiff requests judicial notice of defendant Harkin's report as minors' counsel not for its truth, but to document what Harkins said to the family court. Dkt. No. 105-1 at 7. Harkins objects, arguing the information is "not relevant to the instant proceeding" and "plaintiff's opposition makes abundantly clear he is disputing the veracity of claims made by Harkins in the report, which

United States District Court
Northern District of California

1    necessarily requires the Court to assume the truth of the statements made in the brief." Dkt. No.

2    108 at 6. The Court GRANTS the request for judicial notice of Harkin's report but does not consider

3    the content of the report particularly illuminating or helpful to plaintiff's claims.

4

5         **D.    Rosenthal, Lee, Ehrensaft Requests 1-2 (Minor's Age, Custody Order)**

6         The UCSF defendants request judicial notice of (1) the fact that Minor is no longer a minor,

7    and (2) the state court's custody order, available at Dkt. No. 90, SAC, Ex. A 4-9. Dkt. No. 101-1 at

8    1-2. The Court previously granted judicial notice of these facts. Dkt. No. 86 at 7. The Court

9    GRANTS both requests.

10

11    **II.    Whether the *Rooker-Feldman* Doctrine Applies**

12         Defendants Rosenthal, Lee, and Ehrensaft assert the "Court should refuse to hear plaintiff's

13    claims as it is an improper de facto appeal of the state court custody order." Dkt. No. 100 at 10.

14    Defendant Orr likewise argues "success on the merits would require the parties to relitigate the

15    meaning of that custody order," and the "Second Amended Complaint is in essence a de facto appeal

16    of the custody order, and therefore should be dismissed . . . pursuant to the *Rooker-Feldman*

17    *Doctrine*." Dkt. No. 99 at 8.

18         Federal district courts, as courts of original jurisdiction, may not review the final

19    determinations of state courts. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983);

20    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (holding district courts may not exercise

21    appellate jurisdiction over state courts). If a plaintiff does not assert legal error on the part of the

22    state court, the plaintiff is not bringing a "de facto appeal" prohibited by *Rooker-Feldman*. *See*

23    *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004). The Court concludes that the

24    *Rooker-Feldman* doctrine would prohibit challenges to the validity of the underlying custody order,

25    to the extent such challenges are made. *See id*. However, the Court disagrees with defendants that

26    the Court must decline to hear plaintiff's complaint. While the custody order is relevant to the merits

27    of the case, the Court is not persuaded that "adjudication of the federal claims would undercut the

28    state ruling" because plaintiff is not requesting review or modification of the custody order, and

United States District Court
Northern District of California

Minor has since turned 18. *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); Dkt. No. 86 at 7.

Plaintiff's argument here is unlike other cases dismissed pursuant to *Rooker-Feldman*, where the plaintiff's claims would undercut a state custody order. *See, e.g., Tali v. Liao*, No. 18-0330, 2018 WL 5816171, at *4 (N.D. Cal. Nov. 5, 2018) (dismissing plaintiff's claim that defendants "plotted against him to take his child away" because "in making these allegations against Defendants, [plaintiff] is actually attacking the state custody decision" in violation of the *Rooker-Feldman* doctrine); *Nemcik v. Mills*, No. 16-0322, 2016 WL 4364917, at *6 (N.D. Cal. Aug. 16, 2016) (holding plaintiff's claim was barred by the *Rooker-Feldman* doctrine because the basis of plaintiff's action was to "re-calculate her [state] child support orders").

For the reasons above, the Court DENIES defendants' motion to dismiss the case under the *Rooker-Feldman* doctrine.

### III.    Whether the § 1983 Claim Should be Dismissed For Failure to State a Claim (First Cause of Action)

Plaintiff brings a 42 U.S.C. § 1983 claim against Rosenthal, Lee, Ehrensaft, and Orr (as alleged state actors in their individual capacity) and Bigger, Harkins, and Underhill (as alleged *de facto* state actors in their individual capacity).[5]  SAC at 24.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Dismissal of a § 1983 claim on a Rule 12(b)(6) motion "is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element."  *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).  "Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law."  *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002).

---

[5] Plaintiff's caption mistakenly labels Orr and omits defendant Bigger, but the Court addresses the substance of the claims against these defendants.  See SAC at 24.

United States District Court
Northern District of California

### A.    Whether Defendants are State Actors

Only a state actor can be liable under 42 U.S.C. § 1983.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful'," *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)).").

#### i.    Whether Rosenthal, Ehrensaft, Lee, and Orr are State Actors

The Court's prior order found plaintiff intended to sue Rosenthal, Ehrensaft, Lee, and Orr (the "UCSF defendants") in both their individual and official capacities.  Dkt. No. 86 at 14.  The Court previously dismissed "[a]ll claims against the individual defendants [including Rosenthal, Lee, Ehrensaft, and Orr] in their official capacities . . . based on Eleventh Amendment immunity" but permitted the claim to proceed against Rosenthal, Lee, Ehrensaft, and Orr in their individual capacity.  *Id.*

Although it is undisputed that the individual UCSF defendants are state actors, Rosenthal, Ehrensaft, and Lee move to dismiss the § 1983 claim because "[p]laintiff only asserts claims against the medical defendants in their official capacities and is silent as to any allegation against them in their individual capacities."  Dkt. No. 100 at 19.  Orr likewise moves to dismiss the claim because the SAC "does not contain any allegations that Defendant Orr is being sued in his individual capacity."  Dkt. No. 99 at 1 n. 1.  The Court understands the defendants to be arguing that plaintiff has failed to allege defendants are state actors in their individual capacity because the SAC allegations only arise from defendants' official roles at UCSF.    However, defendants' characterization is incorrect, because "'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* at 25 (citations and internal quotation marks omitted) (emphasis in original).

1    The Court concludes the UCSF defendants are state actors in their individual capacity for

2    purposes of § 1983. *See id.; see also Alden v. Maine*, 527 U.S. 706, 757 (1999) ("Even a suit for

3    money damages may be prosecuted against a state officer in his individual capacity for

4    unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief

5    is sought not from the state treasury but from the officer personally."). The Eleventh Amendment

6    does not bar a suit against these defendants in their individual capacities. *See Hafer*, 502 U.S. at 31

7    ("Insofar as respondents seek damages against [the state officer] personally, the Eleventh

8    Amendment does not restrict their ability to sue in federal court.").

9

10                    **ii.       Whether Harkins is a State Actor**

11         Plaintiff alleges "Harkins is a state actor, or in the alternative, a *de facto* state actor." SAC

12    ¶ 120. Plaintiff argues Harkins is a state actor because Harkins was appointed by the California

13    state judiciary to act as "minor's counsel" pursuant to Family Code § 3151, and neither Hudacko or

14    Underhill made such a request. *Id.* ¶ 121. Plaintiff argues "[a]s a result of Harkins' assignment by

15    the California state judiciary, Harkins' actions are those of the State of California." *Id.* Plaintiff

16    cites no legal authority to support the argument that an attorney appointed by the state to represent

17    a minor is a state actor. *See id.*

18         Harkins argues he is not a state actor because he is a "private attorney appointed by a court

19    to act as counsel for a minor in child custody proceedings," citing the Court's previous order and

20    *Kirtley v. Rainey*, 326 F.3d 1088 1093-1096 (9th Cir. 2003). Dkt. No. 98 at 6. In *Kirtley*, the Ninth

21    Circuit found the actions of "a state-appointed guardian ad litem" were not "state action" for

22    purposes of § 1983. *Kirtley*, 326 F.3d at 1091-96. The Ninth Circuit held "[e]ven if [the state-

23    appointed guardian ad litem] committed the fraudulent or conspiratorial acts of which she is accused,

24    the actions simply are not fairly attributable to the state." *Id.* at 1096. The Court finds the case at

25    hand is sufficiently similar to *Kirtley* to conclude Harkins is not a state actor for purposes of § 1983.

26    The Court addresses whether Harkins is a *de facto* state actor below.

27

28

United States District Court
Northern District of California

10

1

### B.    Whether Defendants are *De Facto* State Actors

2

The parties dispute whether Harkins, Bigger, and Underhill are *de facto* state actors, such

3

that a § 1983 claim can be brought against them.  The Supreme Court "has articulated four tests for

4

determining whether a private individual's actions amount to state action: (1) the public function

5

test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."

6

*Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).  Plaintiff alleges that Harkins, Bigger, and

7

Underhill are de facto state actors under the joint action test.  *See* SAC ¶¶ 122, 130, 141.

8

"Under the joint action test, courts examine whether state officials and private parties have

9

acted in concert in effecting a particular deprivation of constitutional rights."  *Franklin v. Fox*, 312

10

F.3d at 445 (internal quotation marks and citations omitted).  "The test focuses on whether the state

11

has so far insinuated itself into a position of interdependence with the private actor that it must be

12

recognized as a joint participant in the challenged activity."  *Id.* (internal quotation marks and

13

citations omitted).  "Joint action therefore requires a substantial degree of cooperative action."

14

*Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).  A plaintiff may demonstrate joint

15

action by showing the existence of a conspiracy or that the "private party is a willful participant in

16

joint action with the State or its agents."  *Id.* (internal quotation marks and citations omitted).  "To

17

prove a conspiracy between the state and private parties under section 1983, [plaintiff] must show

18

an agreement or meeting of the minds to violate constitutional rights."  *United Steelworkers of*

19

*America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-51 (9th Cir. 1989) (internal quotation marks

20

and citations omitted); see *also Franklin*, 312 F.3d at 445 ("To be liable as a co-conspirator, a private

21

defendant must share with the public entity the goal of violating a plaintiff's constitutional rights.").

22

23

### i.    Whether Bigger is a *De Facto* State Actor

24

The Court previously dismissed the substantive due process claim against Bigger, holding

25

he was not a *de facto* state actor.  Dkt. No. 86 at 12.  However, the Court granted leave to amend

26

because plaintiff filed his amended complaint *pro se*.[6]  *Id.*  Plaintiff continues to allege Bigger is a

27

28

---

[6] Plaintiff retained counsel to file the present complaint.

United States District Court
Northern District of California

1    *de facto* state actor under the joint action test. SAC ¶ 26. Defendant Bigger moves to dismiss the

2    claim, arguing he is not named in any of the causes of action and plaintiff does not allege details of

3    a claim against him in the supportive paragraphs under each cause of action.[7] Dkt. No. 96 at 5. In

4    the alternative, Bigger argues he is not a *de facto* state actor. *Id*. at 6. Bigger argues he was simply

5    Underhill's attorney and the SAC lacks allegations showing he "and any state actor acted in concert

6    or had any plan related to the medical care of [Minor]." Dkt. No. 110 at 4.

7          The Court agrees the SAC has not alleged sufficient facts to allege Bigger is a *de facto* state

8    actor. Plaintiff alleges Bigger is:

9            a licensed California attorney and at all relevant times the attorney representing Underhill in
10            the FAMILY LAW CASE, who, acting as de facto agent of WPATH DEFENDANTS
             [Rosenthal, Ehrensaft, and Lee] and in conformity with the TRUE WPATH MISSION,
11            participated in a conspiracy with the other Defendants and a SCHEME by accepting money
             in exchange for advising Underhill according to the PLAYBOOK, coordinating the
12            Supprelin surgery on [Minor] without the consent of Plaintiff, rather than advising his client
             according to the law, the constitution, or the NO SURGERY INJUNCTION. Defendant
13            Bigger participated in the conspiracy with the other defendants to, help deceive Underhill
             into the believing that GENDER AFFIRMING CARE is safe and effective for her son; by
14            falsely telling Underhill that unconsented to gender identity related surgery on a minor was
             legal; by concealing the fact that Underhill was being tricked consenting to the Minor Child's
15            participation in INVOLUNTARY HUMAN MEDICAL EXPERIMENTATION; and by
             concealing the SCHEME from Hudacko.
16

17    SAC ¶ 25. The SAC further alleges Bigger "financially benefited from the Supprelin for [his] billed

18    time in 'resolving' the issue to circumvent Hudacko's consent… Underhill, UCSF, Rosenthal,

19    Ehrensaft, Bigger and Harkins in a 'meeting of the minds' all worked in concert with a singular goal

20    – namely to have the Supprelin implant surgery occur, be covered by insurance, and be hidden from

21    Hudacko." *Id*. ¶¶ 107-108.

22          Plaintiff attempts to portray Bigger as an actor in a grander, WPATH conspiracy. But

23    Plaintiff's allegations involving WPATH resemble the allegations dismissed by the Supreme Court

24    in *Iqbal*:

25            Respondent pleads that petitioners 'knew of, condoned, and willfully and
             maliciously agreed to subject [respondent]' to harsh conditions of confinement 'as
26

27           [7] Plaintiff does not list defendant Bigger in the § 1983 claim — an omission plaintiff's
     opposition notes was accidental as it is plaintiff's "intention to pursue Bigger as well as the other
28    named Defendants." Dkt. No. 105 at 6. The Court will resolve the question on its merits.

United States District Court
Northern District of California

a matter of policy, solely on account of [respondent's] religion, race, and/or national origin and for no legitimate penological interest. The complaint alleges that Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it. These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim. As such, the allegations are conclusory and not entitled to be assumed true. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

*Iqbal*, 556 U.S. at 680-681 (internal citations omitted). Here, the SAC alleges a conspiracy between the defendants, but the allegations are likewise conclusory in nature. *See, e.g.,* SAC ¶¶ 107-108. Thus, plaintiff's allegations asserting conspiracy between the defendants suffer from the same deficiencies as plaintiff's allegations in the FAC; that is, they are conclusory allegations devoid of specific facts, such that this Court need not accept them as true. *See Iqbal*, 556 U.S. at 680-681; *In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1055.

Under *Iqbal*, the Court next considers "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 682. Here, plaintiff's claims do not. The factual allegations include assertions that Bigger accepted money for legal work and gave his client legal advice. *See* SAC ¶¶ 107, 129. The Court finds these allegations have reasonable explanations, such as the existence of a legitimate attorney-client relationship. See *Iqbal,* 556 U.S. at 681-682 (finding racial discrimination was "not a plausible conclusion" for why respondent was arrested because there were "more likely explanations" for the arrest, including a "legitimate policy" by law enforcement). Additionally, the factual allegations do not establish "an agreement or meeting of the minds to violate constitutional rights" as required to find joint action. *See Phelps Dodge Corp.*, 865 F.2d at 1540-51; *see also Franklin*, 312 F.3d at 445. Though plaintiff uses the term "meeting of the minds," SAC ¶ 108, the assertions made are a "formulaic recitation of the elements" and "not entitled to be assumed true." *See Iqbal*, 556 U.S. at 681-682.

Accordingly, the Court finds Bigger is not a *de facto* state actor for purposes of § 1983. The § 1983 claim is dismissed as to Bigger without leave to amend.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii.    Whether Harkins is a *De Facto* State Actor

The Court previously dismissed federal claims against Harkins, minor's counsel in the family court action, finding he is not a *de facto* state actor. Dkt. No. 86 at 12. In the SAC, plaintiff continues to allege Harkins was a *de facto* state actor. Specifically,

> (a) Harkins was aware of the NO SURGERY INJUNCTION; (b) Harkins was aware of Hudacko's opposition to puberty blockers as well as surgical procedures, at the latest on 10/21/2020; (c) Harkins was intimately involved in the joint effort of REGENTS, Orr, Rosenthal, Ehrensaft, Underhill and Bigger to solve the insurance problem and consent issue. [See Exh."G"]; (d) Harkins excluded Hudacko from the discussion and failed to alert Hudacko of the decision unilaterally being made among the Defendants; (e) Harkins had an email exchange with Underhill on May 11, 2021 and call with "counsel." Upon information and belief, that "counsel" either was Orr or Bigger, as Hudacko did not have counsel on or about May 13, 2021. [See Exh. "F"] Upon information and belief, the "conference call" included Harkins, and Orr and Bigger and included a discussion and agreement to engage in the SCHEME.

SAC ¶ 122.

While plaintiff uses the labels "SCHEME" and "joint effort" the SAC does not include specific factual allegations to support those conclusions. *See* SAC ¶¶ 131-152. Additionally, many of plaintiff's allegations against defendant Harkins do not need to be accepted as true under *Iqbal* for reasons explained *supra*. For example, many of the allegations made against Bigger are also made against Harkins, such as "Harkins financially benefited from the Supprelin for [his] billed time in 'resolving' the issue," and "Harkins in a 'meeting of the minds' [with other defendants] all worked in concert with a singular goal — namely to have the Supprelin implant surgery occur, be covered by insurance, and be hidden from Hudacko." SAC ¶¶ 107-108. The Court does not need to assume as true these conclusory allegations.

The remaining factual allegations against Harkins include that Harkins knew about Section 7b of the custody order, knew Hudacko opposed puberty blockers and surgical procedures, excluded Hudacko from the decision, and had email exchanges and calls with other defendants. *See* SAC ¶ 122. Plaintiff does not allege Harkins, as counsel for Minor in family court, had a duty to include Hudacko in discussions taking place between Harkins and other defendants, or otherwise consider Hudacko's perspective. *See* SAC *generally*. The Court finds Harkins is not a *de facto* state actor because plaintiff's factual allegations do not "show an agreement or meeting of the minds to violate

constitutional rights" as required to "prove a conspiracy between the state and private parties under section 1983." *See Phelps Dodge Corp.*, 865 F.2d at 1540. Bare allegations of a conspiracy between the defendants to violate plaintiff's constitutional rights are insufficient. *See Iqbal*, 556 U.S. at 680-81. The SAC has not cured the deficiencies in this argument in the FAC. The Court finds Harkins is not a *de facto* state actor and dismisses the § 1983 cause of action against him, without leave to amend.

### iii.    Whether Underhill is a *De Facto* State Actor

The Court previously dismissed federal claims against Underhill, finding she is not a *de facto* state actor. Dkt. No. 86 at 12. However, the Court granted leave to amend because plaintiff filed his complaint *pro se*. *Id*.

Plaintiff alleges Underhill "is the mother of [Minor] and Hudacko's ex-wife and, at all times favors attempts to do the impossible -namely 'transition' [Minor] from being a boy into being a girl, falsely believing that such a thing was possible, and falsely believing that GENDER AFFIRMING CARE is safe & effective, and agreed to and coordinated with the other Defendants to allow the Supprelin surgery on [Minor] without the consent of Plaintiff." SAC ¶ 27. Plaintiff's opposition alleges:

> [d]efendants wrote down in medical progress notes how Underhill was working with her counsel, Harkins, and [Orr] to achieve 'resolution.' Drawing reasonable inferences from this circumstantial and direct evidence of discussions, and alleging a meeting of the minds on a common objective, that was in fact achieved, one must ask resolution of what? The only reasonable inference is not 'resolution' of the family law case but 'resolution' of the fact that Plaintiff did not consent to their 'objective' of which some details are only in the possession of Defendants.

Dkt. No. 101 at 8. Underhill moves to dismiss, arguing plaintiff "has made only conclusory allegations that do not meet the criteria of the joint action test." Dkt. No. 97 at 6.

The Court agrees that plaintiff's allegations are too conclusory to establish that Underhill is a *de facto* state actor under the joint action test. Plaintiff's allegations as to defendant Underhill suffer from the same shortcomings as the allegations against Bigger and Harkins. As explained *supra*, the Court finds that the allegations of a conspiracy or "meeting of the minds" between

United States District Court
Northern District of California

1    defendants to violate plaintiff's constitutional rights lack sufficient facts.  The Court is not required

2    to assume such conclusory allegations are true.  *See In re Gilead Sciences Sec. Litig.*, 536 F.3d at

3    1055; *Iqbal*, 556 U.S. at 680-81.

4         Additionally, the new pleadings in the SAC primarily allege the other defendants willfully

5    "deceive[d]" Underhill into "believing that GENDER AFFIRMING CARE is safe and effective so

6    she would consent on behalf of Minor."  SAC ¶¶ 21-26, 124.  Plaintiff also alleges the other

7    defendants "are all willful participants in the plan to conceal from Underhill and the public at large

8    the experimental nature of GENDER AFFIRMING CARE in general, and of the Supprelin Implant

9    surgery in particular."  *Id*. ¶ 125.  Such allegations conflict with finding joint action between

10   Underhill and other defendants because the allegations suggest Underhill was not a "willful

11   participant" and did not have a "meeting of the minds" with the other defendants.  *See Collins*, 878

12   F.2d at 1154; *Phelps Dodge Corp.*, 865 F.2d at 1540.  The Court concludes Underhill is not a *de

13   facto* state actor for § 1983 purposes.  This claim against Underhill is therefore dismissed, without

14   leave to amend.

15

16        **C.    Whether Qualified Immunity Shields the State Actors**

17        The Court previously concluded the UCSF defendants (Ehrensaft, Rosenthal, Lee, and Orr)

18   could argue for qualified immunity in subsequent proceedings.  Dkt. No. 86 at 30.

19        The defense of qualified immunity protects "government officials . . . from liability for civil

20   damages insofar as their conduct does not violate clearly established statutory or constitutional rights

21   of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

22   The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly

23   violate the law.'"  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S.

24   335, 341 (1986)).  A court considering a claim of qualified immunity must determine whether the

25   plaintiff has alleged the deprivation of an actual constitutional right and whether such right was

26   clearly established so that it would be clear to a reasonable officer that his conduct was unlawful in

27   the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533

28   U.S. at 201).  A court may exercise its discretion in deciding which prong to address first, in light

United States District Court
Northern District of California

16

of the particular circumstances of each case. *Id.* at 236.

The previous Court order found it was premature to determine whether a violation of the custody order, if proven, would rise to the level of a violation of plaintiff's constitutional rights. Dkt. No. 86 at 15. Due to the relative novelty of the facts at hand, the Court's discussion therefore begins with the second prong. *See Pearson*, 555 U.S. at 236. Under the second prong of the qualified immunity analysis, "[a] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted). The inquiry of whether a constitutional right was clearly established must be undertaken in "the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

The parties do not dispute that the rights of parents to make child-rearing decisions is a liberty interest under the Fourteenth Amendment, but the relevance of that right to the "specific context" of this case is disputed. *See Saucier*, 533 U.S. at 201. In his complaint, plaintiff does not precisely frame the contours of the constitutional right he asserts. Plaintiff acknowledges the custody order "stripp[ed] Hudacko of most of his fundamental constitutional parental rights" when it awarded custody of Minor to Underhill. SAC ¶ 72. Plaintiff concedes Underhill had medical decision-making authority over Minor. *Id.* However, plaintiff alleges Section 7b of the custody order was an exception, and prohibited "any gender identity related surgery" without both Hudacko and Underhill's consent until Minor was 18. *Id.* In essence, plaintiff's parental rights were limited to a right to veto a particular category of medical procedures before Minor reached adulthood.

The question for the Court is therefore whether a parental right to veto certain medical procedures—when already deprived of general medical-decision making power—has been clearly established as a constitutional right. Without determining that such a right exists, the Court holds that this right has not been clearly established.

The Court finds this case distinguishable from the cases plaintiff cites in support of his position that his constitutional rights were clearly violated. In *Wallis v. Spencer*, 202 F.3d 1126, 1134-35 (9th Cir. 2000), detectives removed young children from their parent's custody, took the

children to a hospital, and ordered an intrusive examination of both children for evidence of sexual abuse without their parents' knowledge or consent and without an order of the court authorizing such intrusive examinations. *Wallis* is a vastly different factual posture than the case at hand, where Underhill—who had near complete authority to make medical decisions on behalf of Minor—consented to the treatments at UCSF, and such treatment was arguably permitted by a court order. SAC ¶¶ 72, 76. *Wallis* cannot be said to "clearly establish" the right of one parent to veto a medical procedure that the other parent and minor both consent to, because *Wallis* addressed a scenario where state detectives seized children and had them examined for investigative purposes. *See id*. *Parham v. J.R.*, 442 U.S. 584, 602 (1979) also addressed a different issue than the case at hand. The issue in *Parham* was "what process is constitutionally due a minor child whose parents or guardian seek state administered institutional mental health care for the child and specifically whether an adversary proceeding is required prior to or after the commitment." *Parham*, 442 U.S. at 587. The case at hand does not involve institutionalized mental health care, or questions related to the due process owed to a minor defendant. *See id*.

At the November 15, 2024 motion hearing, plaintiff's counsel cited an additional case, *Pope v. Cnty. of San Diego*, 719 F. Supp. 3d 1076 (S.D. Cal. 2024). The Court's understanding is that plaintiff identified this case for its explanation of two rights recognized by the Supreme Court. The rights discussed in *Pope* include (1) the parents' interest in custody and control of their children, which encompasses the right to make medical decisions for the child, and (2) the family right to association, which includes a right for parents and children to be together when a child receives medical care. *Id*. at *1084-91. Citing numerous cases—most of which concerned parental rights in the child welfare context—*Pope* describes these rights as "long established" but "not absolute." *Id*. at 1086 (internal quotation marks and citation omitted).

Neither of the rights discussed in *Pope*[8] apply to plaintiff's circumstances here. The state

---

[8] The Court does not understand plaintiff to be arguing that *Pope* itself "clearly establishes" a relevant right, but to the extent plaintiff wishes to make this argument, the Court notes *Pope* was decided in May 2024, after the events at issue here.

family court lawfully stripped plaintiff of nearly all his parental rights in its custody order.  SAC ¶ 72.  In addition to Section 7a and 7b excerpted *supra*, the custody order states: "Mother [Underhill] shall be the sole temporary legal custodial parent of [Minor] and may make decisions on her own for [Minor's] health, education, and welfare without father's consent."  While "Father [plaintiff] shall have a right to obtain all otherwise confidential information regarding [Minor's] health, education, and welfare," the order specifies that "Father does not have a 'right' to attend medical appointments for [Minor]."  SAC Ex. A at 6.  The order thus at least limits, if not removes, the two rights discussed in *Pope* as they pertain to plaintiff.  *See Pope*, 719 F. Supp. 3d at 1084-91.[9]

Further, the Court is not persuaded by plaintiff's apparent argument that defendants violated a "clearly established" Constitutional right because Section 7b of the custody order (plaintiff's ability to withhold consent to surgical procedures) overrides Section 7a (Minor's ability to pursue hormone therapy if recommended by UCSF).  Reasonable doctors or lawyers could have believed the Supprelin implant was part of or an adjunct to the type of hormone therapy specifically permitted by Section 7a of the custody order.  *See* SAC ¶ 76.  While a court might conclude defendants wrongly believed the procedure was permitted without plaintiff's consent, the correct interpretation of these provisions of the custody order was not "beyond debate."  *See Carroll*, 574 U.S. at 16.[10]

To be clear, the Court does not determine whether plaintiff's constitutional rights were actually violated, but the Court holds that the UCSF defendants did not violate a "clearly established constitutional right."  As such, they are entitled to qualified immunity.

///

_____

[9] As noted above, plaintiff does not in this case challenge the legality or constitutionality of that order.  Had he done so, the *Rooker-Feldman* doctrine would have applied.

[10] Separate from the constitutional claim, plaintiff is entitled to make an argument that defendants violated the terms of the custody order, but that argument belongs back in the state court.  The Court notes plaintiff filed but later withdrew criminal contempt actions against Underhill, Harkins, Bigger, and UCSF in Contra Costa County Superior Court.  Dkt. No. 77 at 5.  The propriety of defendants' actions could clearly be determined in that forum.

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.      § 1983 Claim Summary**

The Court GRANTS the motion to dismiss as to defendants Ehrensaft, Rosenthal, Lee, and Orr because they are shielded from liability by qualified immunity.  The Court GRANTS the motion to dismiss as to defendants Harkins, Bigger, and Underhill, because plaintiff has not pled facts establishing they are *de facto* state actors.  The Court dismisses plaintiff's § 1983 claim with prejudice.

**IV.     State Law Claims**

**A.      Whether the Court Must Dismiss the State Claims**

"District courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In exercising discretion to retain supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . ."  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).  If the Court dismisses the remaining federal claim, the Court may dismiss the state claims (but it is not required to do so).  *See id*.  Here, the Court will consider the state law claims on their merits, to avoid forcing the parties to relitigate these issues in state court.

**B.      Whether the Fraud by Concealment Claim Should be Dismissed for Failure to State a Claim (Second Cause of Action)**

The Court previously granted a motion to dismiss plaintiff's fraudulent concealment claim, without leave to amend as to Bigger, Harkins, and Orr, and with leave to amend as to Rosenthal, Ehrensaft, Lee, and Underhill.  Dkt. No. 86 at 23-24.  The Court additionally noted plaintiff must meet the heightened pleading standard of Rule 9(b) if plaintiff filed a fraud by concealment claim in an amended complaint.  *Id*.  Plaintiff's amended fraud by concealment claim is brought against Rosenthal, Ehrensaft, Lee, and Orr.  SAC at 28.  The Court addresses the claim only as to Rosenthal,

1    Ehrensaft, Lee and Underhill because leave to amend was not granted as to defendant Orr.[11]  Dkt.

2    No. 86 at 23-34.

3         The required elements of fraudulent concealment are: "(1) concealment or suppression of a

4    material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant

5    intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff

6    was unaware of the fact and would not have acted as he or she did if he or she had known of the

7    concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

8    suppression of the fact."  *Broge v. ALN Int'l, Inc.*, No. 17-CV-07131-BLF, 2018 WL 2197524, at

9    *4 (N.D. Cal. May 14, 2018) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605-06

10   (2014)).   Under Rule 9(b), fraud claims must be pled with particularity.  Rule 9(b)'s heightened

11   pleading requirements demand that "[a]verments of fraud must be accompanied by the who, what,

12   when, where, and how" of the misconduct charged and "must set forth what is false or misleading

13   about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th

14   Cir. 2003) (internal quotation marks and citations omitted).  Fraud allegations must include the

15   "time, place, and specific content of the false representations as well as the identities of the parties."

16   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation

17   omitted).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be

18   alleged generally."  Fed. R. Civ. P. 9(b).

19        After reviewing the added allegations in plaintiff's SAC, the Court concludes plaintiff still

20   has not established that any of the remaining defendants had a "duty to disclose" facts to plaintiff.

21   *See Graham*, 226 Cal. App. at 605-06.  Plaintiff alleges the UCSF defendants had a duty to refrain

22   from "involuntary human medical experimentation" and to follow the family law court order.  SAC

23   ¶ 155.  To the extent such a duty exists, plaintiff does not cite legal authority or otherwise explain

24   how this translates to a "duty to disclose" information to plaintiff.  *See Graham*, 226 Cal. App. at

25

26        [11] Plaintiff did not name Underhill in the caption of this action even though the Court granted
     leave to amend as to Underhill.  Dkt. No. 86 at 23-24.  Plaintiff argues this is error in his opposition
27   and seeks leave to amend to correct the error.  Dkt. No. 103 at 11.  For efficiency, the Court is
     considering the claim as if Underhill had been named.  Plaintiff concedes Orr should not have been
28   named as a defendant for the fraudulent concealment claim.  Dkt. No. 103 at 11.

605-06.  The fraudulent concealment claim is DISMISSED as to Rosenthal, Ehrensaft, and Lee.

As to his fraud claim against Underhill, plaintiff alleges "Underhill owed Plaintiff a fiduciary duty and the duty of good faith and fair dealing as a former spouse and co-parent," but it is again unclear how this would translate to a "duty to disclose."  *Id.*; SAC ¶ 157.  Considering the custody order did not provide plaintiff with any right to receive updates regarding [Minor's] medical treatment, plaintiff's allegations are too conclusory to establish a duty to disclose under the heightened Rule 9(b) requirement.  SAC, Ex. A at 6; *Graham*, 226 Cal. App. at 605-06.  Additionally, plaintiff alleges Underhill was "deceived" by the other defendants who worked to conceal the truth from Underhill.  SAC ¶¶ 21-26, 124.  The allegations indicate Underhill was not a perpetrator of the alleged fraud, but herself a victim.  *See id.*  The fraudulent concealment claim is DISMISSED as to Underhill as well.

> **B.     Whether the Negligent Infliction of Emotional Distress ("NIED") Claim Should be Dismissed For Failure to State a Claim (Third Cause of Action)**

The Court previously dismissed plaintiff's NIED claim as to defendant Harkins, Bigger, and Orr because the plaintiff could not allege they owed plaintiff a duty of care because plaintiff was not their client, or a third party in a transaction intended to benefit him.  Dkt. No. 86 at 28.  As to the individual UCSF defendants and Underhill, the Court dismissed with leave to amend.  *Id.*  Plaintiff's SAC alleges the NIED claim against Rosenthal, Ehrensaft, Lee, Orr, and Underhill.  SAC at 31.  Plaintiff's opposition concedes the Court dismissed this cause of action as to Orr without leave to amend.  Dkt. No. 103 at 11.  Thus, the Court does not consider Orr in the analysis.

"California courts treat [NIED] as a form of the tort of negligence with the following elements: (1) duty; (2) breach of duty; (3) causation; (4) and damages."  *Redd-Oyedele v. Santa Clara Cnty. Off. of Educ.*, No. 20-CV-00912-SVK, 2020 WL 7319404, at *4 (N.D. Cal. Dec. 11, 2020) (citing *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992)).  "Whether a defendant owes a duty of care is a question of law."  *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).  The California Supreme Court has indicated that when considering the existence of a duty, several factors "require consideration" including:

the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Christensen v. Superior Court*, 54 Cal. 3d 868, 885-86 (1991) (internal quotation marks and citation omitted). "In a direct victim case, a plaintiff seeks damages for emotional distress resulting from a breach of duty owed the plaintiff which is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 108 (1992) (quoting *Marlene F.*, 48 Cal. 3d at 590)); *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).  In direct victim cases, the limits on bystander cases have no direct application and well-settled principles of negligence are invoked.  *Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182, 206 (2012).

Plaintiff alleges that "[d]efendants were each aware of the fact that Hudacko, like any good parent, would be traumatized upon learning that his child had been subjected to INVOLUNTARY HUMAN MEDICAL EXPERIMENTATION. Thus, Defendants and each of them owed Hudacko an affirmative duty to refrain from participating in the SCHEME and to refrain from advancing the WPATH TRUE MISSION."  SAC ¶ 173.  Plaintiff additionally alleges "[d]efendants, as medical professionals, members of WPATH had a duty to disclose their economic interests and research involving experimentation on children," and "Underhill as former spouse to Plaintiff and co-parent owed a fiduciary duty and duty of good faith and fair dealing." *Id*. ¶¶ 174-175.  Plaintiff indicates he is suing under a "direct victim theory not a bystander theory." Dkt. No. 101 at 12.

The medical defendants move to dismiss, arguing "Plaintiff's claim fails because none of the allegations support a fiduciary or special relationship with the medical defendants or any actionable conduct."  Dkt. No. 100 at 28.  The medical defendants further argue "[a]ny claim that the medical defendants owed a duty to disclose their supposed 'economic and research interests' in gender affirming care and with respect to their involvement with WPATH, also fails because this duty was owed to the patient and not Mr. Hudacko."  *Id*. at 29.  Underhill also moves to dismiss, arguing the SAC still fails to state a claim against Underhill for NIED.  *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The Court finds plaintiff has not alleged sufficient facts to establish the necessary legal duty as a matter of law. The Court previously found plaintiff's allegations in the FAC did not sufficiently allege that any of the defendants owed plaintiff a duty of care imposed on them as a matter of law or that arises out of the relationship between plaintiff and defendant.[12] Dkt. No. 86 at 28. Plaintiff's allegations related to defendants' duty are nearly identical in the SAC (including allegations that defendants owe plaintiff a duty to refrain from "participating in the SCHEME," refrain from "advancing the WPATH TRUE MISSION," and refrain from "concealing the SCHEME." *See* SAC ¶¶ 172-178. The SAC does not allege a legal duty owed by defendants to plaintiff, so the claim is DISMISSED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions to dismiss all causes of action. For the first cause of action, the Court GRANTS the motion to dismiss as to defendants Ehrensaft, Rosenthal, Lee, and Orr because they are shielded from liability by qualified immunity, and GRANTS the motion to dismiss as to defendants Harkins, Bigger, and Underhill, because plaintiff has not pled facts establishing they are *de facto* state actors. The Court GRANTS the motion to dismiss the second and third causes of action because plaintiff has not pled facts establishing all required elements of each claim.

**IT IS SO ORDERED**.

Dated: November 25, 2024

SUSAN ILLSTON
United States District Judge

---

[12] In the FAC, plaintiff alleged that "he was owed a duty by defendants to 'refrain from performing gender identity related surgery on the minor' without his consent and that defendants breached their duty to plaintiff by 'willfully violating the no surgery injunction' in the state court order." Dkt. No. 86 at 28.